UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DAVID M. ROEDER,<br>8402 Wagon Wheel Road<br>Alexandria, VA 22309<br><br>CHARLES W. SCOTT,<br>125 Spivey Chase Trail<br>Jonesboro, GA 30236<br><br>DON A. SHARER,<br>1218 St. Andrews Drive<br>Mansfield, TX 76063<br><br>BARBARA B. ROSEN and<br>ARIANA B. ROSEN<br>425 Riverside Drive<br>New York, NY 10025<br><br>    individually and on behalf<br>    of a class of similarly<br>    situated individuals<br><br>    Plaintiffs,<br><br>v.<br><br>THE ISLAMIC REPUBLIC OF IRAN<br>    Ministry of Foreign Affairs<br>    Khomeini Avenue<br>    United Nations Street<br>    Tehran, Iran<br><br>    Defendant. | Case No. _____<br>Judge: _____<br>Deck Type: Civil General<br>Date Stamp: _____<br><br><br><br><br><br><br><br><br><br><br><br><br><br>COMPLAINT FOR<br>COMPENSATORY AND<br>PUNITIVE DAMAGES<br>PURSUANT TO 28 U.S.C. § 1605A,<br>Public Law No. 110-181 |

Plaintiffs David M. Roeder, Charles W. Scott, Don A. Sharer, Barbara B. Rosen and

Ariana B. Rosen, individually and as representatives of a class of similarly situated individuals,

by and through counsel, bring this action seeking damages arising from the November 1979

1

seizure of the hostage plaintiffs from the American Embassy and from the Foreign Ministry in Iran as hostages for more than four hundred days.

This action is a related action to *Roeder v. Islamic Republic of Iran, et al.*, Case No. 1:00CV03110(EGS), and arises out of the same act or incident which was timely commenced under section 1605(a)(7) of title 28 in this Court. As such, this action qualifies as a related action under 28 U.S.C. § 1605A.

Plaintiffs are American citizens who seek judgment against defendant Iran for its acts of hostage taking and torture directed at them and their families by Iran and its agents when the hostage plaintiffs were diplomatic representatives of the United States dependent upon the care, immunity, and protection of Defendant Iran. In support thereof, plaintiffs assert the following:

## JURISDICTION AND VENUE

1. Jurisdiction over the subject matter of this case arises under 28 U.S.C. § 1330(a), 28 U.S.C. § 1331, and 28 U.S.C, § 1605A. This action is subject to 28 U.S.C. 1605A(a)(2)(B), and is therefore this Court has federal subject matter jurisdiction over it. Furthermore, this acts complained of herein are related to Case Number No. 1:00CV08110(EGS) in the United States District Court for the District of Columbia.

2. The Defendant Iran is subject to suit in this Court pursuant to the Foreign Sovereign Immunities Act, 28 U.S.C. § 1605(a)(7), § 1605A, and Public Law No. 110-181.

3. Venue is proper in this District pursuant to 28 U.S.C. § 1391(f)(4), and pursuant to 28 U.S.C. § 1391(d).

## THE PARTIES

4. Plaintiff David M. Roeder:

   (a) is, and was at the times of the events alleged in this complaint, a citizen of the United States;

   (b) was taken hostage by defendant Iran from the American Embassy or the Foreign Ministry in Tehran in 1979 and was therefore a victim of "hostage taking" as defined in Article 1 of the International Convention Against the Taking of Hostages, and in 28 U.S.C. § 1605A(h)(2);

   (c) was a victim of "torture" as defined in section 3 of the Torture Victims Protection Act of 1991 (28 U.S.C. § 1350 note), and in 28 U.S.C. § 1605A(h)(7);

   (d) suffered "personal injury" as a result of Defendant's actions of torture or hostage taking, as defined in 28 U.S.C. § 1605(a)(7) and 28 U.S.C. § 1605A(c);

   (e) is a member of the class defined in paragraph nine infra.

5. Plaintiff Charles W. Scott:

   (a) is, and was at the times of the events alleged in this complaint, a citizen of the United States;

   (b) was taken hostage by defendant Iran from the American Embassy or the Foreign Ministry in Tehran in 1979 and was therefore a victim of "hostage taking" as defined in Article 1 of the International Convention Against the Taking of Hostages, and in 28 U.S.C. § 1605A(h)(2);

   (c) was a victim of "torture" as defined in section 3 of the Torture Victims Protection Act of 1991 (28 U.S.C. § 1350 note) and in 28 U.S.C. § 1605A(h)(7);

(d) suffered "personal injury" as a result of Defendant's actions of torture or hostage taking, as defined in 28 U.S.C. § 1605(a)(7) and 28 U.S.C. § 1605A(c);

(e) is a member of the class defined in paragraph nine infra.

5.  Plaintiff Don A. Sharer:

(a) is, and was at the times of the events alleged in this complaint, a citizen of the United States;

(b) was taken hostage by defendant Iran from the American Embassy or the Foreign Ministry in Tehran in 1979 and was therefore a victim of "hostage taking" as defined in Article 1 of the International Convention Against the Taking of Hostages, and in 28 U.S.C. § 1605A(h)(2);

(c) was a victim of "torture" as defined in section 3 of the Torture Victims Protection Act of 1991 (28 U.S.C. § 1350 note) and in 28 U.S.C. § 1605A(h)(7);

(d) suffered "personal injury" as a result of Defendant's actions of torture or hostage taking, as defined in 28 U.S.C. § 1605(a)(7), and 28 U.S.C. § 1605A(c);

(e) is a member of the class defined in paragraph nine infra.

6.  Plaintiff Barbara B. Rosen:

(a) is, and was at the times of the events alleged in this complaint, a citizen of the United States;

(b) was the spouse of class member Barry M. Rosen when he was taken hostage by defendant Iran from the American Embassy or the Foreign Ministry in Tehran in 1979 and was therefore a victim of "hostage taking" as defined in Article 1 of the International Convention Against the Taking of Hostages and in 28 U.S.C. §

4

1605A(h)(2);

(c) was a victim of "torture" as defined in section 3 of the Torture Victims Protection Act of 1991 (28 U.S.C. § 1350 note) and in 28 U.S.C. § 1605A(h)(7);

(d) suffered "personal injury" as a result of Defendant's actions of torture or hostage taking, as defined in 28 U.S.C. § 1605(a)(7) and 28 U.S.C. § 1605A(c));

(e) is a member of the class defined in paragraph nine infra.

7. Plaintiff Ariana B. Rosen:

(a) is, and was at the times of the events alleged in this complaint, a citizen of the United States;

(b) was the child of class member Barry M. Rosen when he was taken hostage by defendant Iran from the American Embassy or the Foreign Ministry in Tehran in 1979 and was therefore a victim of "hostage taking" as defined in Article 1 of the International Convention Against the Taking of Hostages and in 28 U.S.C. § 1605A(h)(2);

(c) was a victim of "torture" as defined in section 3 of the Torture Victims Protection Act of 1991 (28 U.S.C. § 1350 note) and in 28 U.S.C. § 1605A(h)(7);

(d) suffered "personal injury" as a result of Defendant's actions of torture or hostage taking, as defined in 28 U.S.C. § 1605(a)(7) and 28 U.S.C. § 1605A(c);

(e) is a member of the class defined in paragraph nine infra.

8. Defendant Iran currently is, as of the time of the filing of this related action in accordance with 1605A(a)(2)(A)(i)(II), a state sponsor of terrorism as designated by the Secretary of State, pursuant to section 6(j) of the Export Administration Act of 1979 (50 U.S.C. App.

§ 2405(j)), and section 620A of the Foreign Assistance Act of 1961 (22 U.S.C. § 2371), and is a government that has repeatedly provided support to acts of international terrorism. Defendant Iran previously was likewise designated a state sponsor of terrorism at the time plaintiffs filed the related action of *Roeder v. Islamic Republic of Iran, et al.*, Case No. 1:00CV03110(EGS). Defendant Iran is subject to private suit by these plaintiffs for the acts of hostage taking and torture complained of herein, by virtue of the enactment of Public Law No. 110-181, codified at 28 U.S.C. § 1605A(c). The acts complained of herein are related to Case Number No. 1:00CV08110(EGS) in the United States District Court for the District of Columbia. Plaintiffs have previously offered Iran a reasonable opportunity to arbitrate this dispute but defendant Iran has failed to accept this offer. Simultaneously with the filing of this action, plaintiffs are renewing their prior offer to Iran to arbitrate this dispute.

## CLASS ACTION ALLEGATIONS

9. The named plaintiffs are representative of that class of juridical persons (the "Plaintiff Class") comprising American citizens taken hostage by defendant Iran from the American Embassy or from the Foreign Ministry in Iran in 1979, their spouses, and their children who are victims of Defendant's conduct as alleged in this Complaint. The Plaintiff Class includes the same individuals who were members of the certified class in Case Number No. 1:00CV08110(EGS) in the United States District Court for the District of Columbia. The Plaintiff Class also includes the estates of those plaintiffs who have since deceased. Each of the plaintiffs' claims is governed by Public Law No. 110-181, as codified as 28

U.S.C. § 1605A.

10. The claims of each of the named plaintiffs are the same as or are typical of the claims of the members of the Plaintiff Class. Said claims present questions of law and fact common to the claims of all members of the Plaintiff Class.

11. Plaintiffs' Counsel will vigorously pursue the claims of, and adequately protect the interests of, the Plaintiff Class. The named plaintiffs will fairly and adequately protect the interests of the Plaintiff Class.

12. This action is properly maintainable as a plaintiff class action because:

   a. the class members are so numerous (exceeding fifty members) that joinder of each is impracticable;

   b. the named plaintiffs are adequate, capable, and proper class representatives;

   c. plaintiffs are aware of no reason concerning the management of this action that precludes its maintenance as a plaintiff class action;

   d. questions of law and fact common to the class predominate over those questions affecting only certain individual class members; and

   e. a class action is superior to other available mechanisms for the just, speedy, and fair adjudication of the claims at issue.

## MATERIAL FACTS FROM WHICH THE CLAIM ARISES

13. On November 4, 1979, defendant Iran seized sixty-six individuals who were employed at the American Embassy in Iran, and took them into custody as hostages (hereinafter, the "hostages").

14. Of the sixty-six original hostages, approximately fourteen were released over the course of the next year. Of the original hostages, 52 hostages were detained by defendant Iran for a period of 444 consecutive days.

15. During their period of captivity, the hostages were blindfolded, had their hands tied, were taunted, and were otherwise subject to physical and mental abuse by their captors.

16. Throughout their period of captivity, the plaintiff hostages were tortured and were constantly and intentionally placed in fear for their lives by their Iranian captors, including:

   a.. Being kicked, punched, and struck repeatedly by their captors, often with blunt instruments such as a steel bar, and often lasting until they lost consciousness;

   b. Being blindfolded and repeatedly walked into a tree;

   c. Being interrogated for periods of hours, sometimes through the night, and often with their hands tied or blindfolded or handcuffed;

   d. Being threatened with release to a chanting mob that would tear them apart;

   e. Being threatened with spy trial, or trials for their "crimes," to be followed by summary execution;

   f. Being prepared for summary executions, including being placed against the wall with marksman locking and loading their guns, followed by orders to "get ready," and to "take aim"

   g. Being imprisoned in cold dark locations without adequate clothing, food or minimal health care, including prisons;

   h. Being held in solitary confinement in complete isolation from other fellow

       hostages;

    i. Being held in locations surrounded by mobs constantly yelling "Death to the hostages;"

    j. Being forbidden from communicating with each other for months, and being denied access to any information or news relating to their situation.

17. From the outset, the Defendant Iran fully endorsed, supported, ratified, and condoned the seizure of plaintiff hostages and their subsequent abusive treatment. At all relevant times, the individuals who seized and maintained custody of plaintiffs as hostages were acting as the authorized agents of Defendant Iran. The hostages were visited periodically by representatives of the Iranian government, including by persons who later occupied the highest ranking positions in the Iranian government, such as a Deputy Minister of Defense who later became the President of Iran. Plaintiffs were also held captive in government prisons, including Evin Prison and Komiteh Prison. In addition to being incarcerated in government prisons, some hostages were detained on the premises belonging to the Ministry of Foreign Affairs. One of the interrogators became Iran's Deputy Minister of Foreign Affairs, and another became its President, current President Amadinejad.

18. The aforementioned acts of Defendant Iran constitute torture and hostage taking within the meaning of 28 U.S.C. § 1605A(h)(2) & (7), which involved infliction of personal injury upon plaintiffs within the meaning of 28 U.S.C. § 1605A(c). Specifically, Iran's seizure of hostage plaintiffs and its infliction of intolerable conditions of custody upon them, was for purposes of: obtaining information or confessions; punishing plaintiffs for

alleged grievances against the United States; and for intimidating or coercing them, their family members, other Americans, and the United States Government, into taking actions for the benefit of Iran and its government leaders. Similar conduct by United States agents, officials, or employees acting within the scope of their office would be actionable if conducted within the United States.

19. The aforementioned acts of Defendant Iran inflicted personal injury not only upon the plaintiffs who were held captive, but also upon their immediate families. The spouses and children of the hostages were subjected to daily reports of the unending captivity of their loved one's and their potential trial and executions as alleged spies. For example, the following Iranian demand was reported in the New York Times on December 23, 1980:

> IRANIAN ASSERTS CAPTIVES FACE TRIALS IF DEMAND FOR FUNDS NOT MET
>
> TEHRAN, Iran, Dec. 22-- The Speaker of Iran's Parliament said today that the 52 American hostages would be put on trial if the United States did not agree to the Iranian deposit of some $24 billion in Algeria for their release. 'It is a just and fair answer we have given,' the Speaker, Hojatolislam Hashemi Rafsanjani, said of the Iranian demand as he renewed an often-expressed Iranian threat that the hostages would be tried as spies if the United States balked at Iran's terms.
>
> N.Y. Times, December 23, 1980, page A1.

These family members were affected by the daily uncertainty of not knowing whether their family members were returning, or even alive.

20. Plaintiff class brought suit against Iran in this Court in 2000. The State Department intervened in that action, and successfully moved to have plaintiffs' claims in that action dismissed on the ground that the executive agreement known as the Algiers Accords, and subsequent regulations promulgated thereunder, barred plaintiffs from suing Iran for its

actions in taking plaintiffs hostage. *See Roeder v. Islamic Republic of Iran*, 195 F.Supp.2d 140 (D.D.C. 2003). That ruling was affirmed by the Circuit Court of Appeals for the D.C. Circuit. *See Roeder v. Islamic Republic of Iran*, 333 F.3d 228 (D.C. Cir. 2004). The United States Supreme Court denied plaintiffs' petition for a writ of certiorari. *See Roeder v. Islamic Republic of Iran*, 542 U.S. 915 (2004). In January, 2008, both chambers of the United States Congress approved legislation creating a private right of action for hostage taking or torture against state sponsors of terror which would become Public Law No. 110-181 when it was signed by President Bush on January 28, 2008.

## CAUSE OF ACTION

### Private Right of Action Authorized by 28 U.S.C. § 1605A(c)

21. Paragraphs one through twenty are incorporated herein as if fully set forth.

22. The aforesaid acts of defendant Iran constitute hostage taking and torture within the meaning of 28 U.S.C. § 1605A.

23. Plaintiffs have suffered personal injury within the meaning of 28 U.S.C. §1605A as a direct and proximate result of the aforementioned acts of hostage taking and torture by defendant Iran.

24. As a direct and proximate result of defendant's acts of hostage taking and torture, plaintiffs have suffered damages, including pain and suffering, economic damages, and solatium compensable under 28 U.S.C. § 1605A. Further, Defendant's acts of hostage taking and torture were willful, malicious, wanton, and in reckless disregard of the rights of plaintiffs and of all Americans, warranting the imposition of punitive damages under

28 U.S.C. § 1605A.

25. Under the damages formula applied by courts of this jurisdiction for acts of hostage taking by state sponsors of terrorism, hostages are typically awarded $10,000 for each day of captivity. Under this formula, each of the 52 hostages would receive $4,400,000 in compensatory damages for their 444 days of captivity, while their spouses and children would receive a percentage of this amount. The aggravating circumstances of this case, however, warrant an upward adjustment of damages for both hostage and family member alike.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs pray that the Court grant plaintiffs judgment in their favor and against Defendant Iran and grant plaintiffs:

A. Compensatory damages against Defendant Iran in the amount of $600 million ($600,000,000);

B. Punitive damages against Defendant Iran in the amount of $ 6 billion ($6,000,000,000);

C. Reasonable costs and expenses;

D. Reasonable attorneys fees;

E. Prejudgment interest; and,

F. Such other and further relief which the Court may determine to be just and equitable under the circumstances.

Dated: March 21, 2008.

                                    Respectfully submitted,

                                    V. Thomas Lankford D.C. Bar # 233551
                                    William Coffield  DC Bar # 431126
                                    Terrance G. Reed  D.C. Bar # 367172
                                    Lankford, Coffield & Reed  PLLC
                                    120 North Saint Asaph Street
                                    Alexandria, VA 22314
                                    (Ph) 703/299-5000
                                    (Fax) 703/299-8876

                                    *Counsel for Plaintiffs*

JS-44
(Rev.1/05 DC)

## CIVIL COVER SHEET

### I (a) PLAINTIFFS
David M. Roeder, Charles W. Scott, Don A. Sharer, Barbara B. Rosen and Ariana Rosen et al

### DEFENDANTS
The Islamic Republic of Iran

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  88888
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT  99999
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
V. Thomas Lankford,
William F. Coffield,
Terrance G. Reed
120 N. St. Asaph St.
Alexandria, VA 22314    703-299-5000

ATTORNEYS (IF KNOWN)

### II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ● 3 Federal Question (U.S. Government Not a Party)
- ○ 2 U.S. Government Defendant
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

### III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

### IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

**○ A. Antitrust**
- ☐ 410 Antitrust

**○ B. Personal Injury/Malpractice**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Medical Malpractice
- ☐ 365 Product Liability
- ☐ 368 Asbestos Product Liability

**○ C. Administrative Agency Review**
- ☐ 151 Medicare Act

Social Security:
- ☐ 861 HIA ((1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g)
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g)

Other Statutes
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

**○ D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

**● E. General Civil (Other)** OR **○ F. Pro Se General Civil**

**Real Property**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent, Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**Personal Property**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**Bankruptcy**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**Property Rights**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**Federal Tax Suits**
- ☐ 870 Taxes (US plaintiff or defendant
- ☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
- ☐ 610 Agriculture
- ☐ 620 Other Food &Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 RR & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**Other Statutes**
- ☐ 400 State Reapportionment
- ☐ 430 Banks & Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation

- ☐ 470 Racketeer Influenced & Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Satellite TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 900 Appeal of fee determination under equal access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☒ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
○ 1 Original Proceeding   ○ 2 Removed from State Court   ○ 3 Remanded from Appellate Court   ● 4 Reinstated or Reopened   ○ 5 Transferred from another district (specify)   ○ 6 Multi district Litigation   ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
28 USC 1605 – Plaintiffs are American citizens held hostage by defendant and the hostages spouses and children

**VII. REQUESTED IN COMPLAINT**   CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 [X]   DEMAND $ $6,600,000,000.00   Check YES only if demanded in complaint   JURY DEMAND: YES ☐  NO [X]

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES [X]   NO ☐   If yes, please complete related case form.

DATE 3/19/08   SIGNATURE OF ATTORNEY OF RECORD _[signature]_

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

- I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

- III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

- IV.  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

- VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

- VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.